Okay, we'll go to the next case in the calendar, which is Moran v. Screening Pros. We only have one lawyer showing. Okay, fine. Thank you. We will go to Mr. Falk. Yes, Your Honor, pronounced like F-A-L-K, pronounced like F-A-L-K. If it pleases the court, my name is Devin Falk. I represent my client, Mr. Felix Moran, who is a plaintiff and appellant in this case. I want to start off by arguing that what the defendant did in this case was absolutely willful. More than 10 years into the litigation, the defendant still has no idea how the dismissal was obtained. Was it by a 1203.4 expungement? Was it by a finding of factual innocence? Or was it by something in between? Nobody has any idea. Can I ask a question about this, just because of the lay of the land? There was another conviction that was reported, and that was properly reported. Is that right? The conviction, yes. Okay. And the argument is that that's why he was denied the housing, so this is all, no, never mind. I understand, but what we're talking about are the dismissed charges, specifically the one dismissed charge that I think that we've all been dealing with for the last 10 years, which is the under influence. So, in any case, even today, we still have no idea what happened in that case. The defendant never tried to obtain the court record. The defendant purchased the information from a third party entity that's not a courthouse and with unknown reliability. We have no idea where that entity obtained that information. When we conducted our own investigation in this case and tried to obtain the court records, there was nothing. So, despite all that, for the last 10 years, everybody has assumed that Felix Moran was guilty of this case, that he obtained the dismissal because of 1203.4 expungement, which is not. So, having said that, even assuming, for the sake of argument, that we adopt Judge Kleinfeld's dissent as the majority rule, the dismissal is not necessarily adverse because we have no idea what kind of dismissal it was. It could be adverse if it's, certainly, if it was post-conviction relief, such as 1203.4, but can it be really adverse if it's dismissed upon a finding of factual innocence? I'm a little confused. We've already decided the merits of this case, right? And you what? Yes. So, the question now is, was it willful or negligent? Is that the question? Yes. All right. So, why are we backtracking on the question of whether it was a violation of the statute? We know it was. Because I'm trying to argue that it was willful. The defendant argues that it was not willful because it was an issue of first impression. What I'm trying to do is lay down the groundwork as to why it's willful. Because in 2010, when all the defendants had in front of them was a copy of the charge, was the charge and the dismissal and the plain text of the FCRA. Looking at the plain text of the FCRA, how can the defendant determine that the dismissal was anything other than a positive or benign event? That would allow the defendant to tag on another seven years for reporting. The only thing at the time, in 2010, when the defendant was determining whether to report this case or not, was the charge. That was what was definitively adverse. And the law says, if it falls under 1681 CA2, if it was constituted an arrest record, it's a date of entry. If it falls under 1681 CA5, as an adverse item of information, the event occurred when the charge was filed. So, under no circumstances, no reasonable person at the time could have concluded that the dismissal was something sufficient to give rise to another seven years of reporting. It was reckless for the defendant to consider that because there's nothing there. The statute was crystal clear. It was crystal clear that the only thing that was adverse was the charge itself. So, that's why I believe that what the defendant did was reckless. Because the defendant assumed, without any ounce of evidence, that the dismissal occurred... But the problem you have here is that the district court, originally, and the defendant, the dissenter, in the Ninth Circuit, both thought otherwise. So, therefore, how could it be willful or intentional for the defendant to think otherwise? Because they were thinking under a false assumption. Well, they were. But still, how could it be intentionally wrong? Because, for example, Judge Kleinfeld's dissent, he presumed, he stated that Gabriel Moran, and I quote, let me pull up his quote, I'm sorry, Bob. Judge Kleinfeld stated that Moran's 2004 dismissal, almost four years after the charge, suggests that Moran, in all likelihood, behaved himself and conformed to the conditions of release for four years after a guilty plea. Judge Kleinfeld assumed my client was guilty. That's false. That's pure speculation. There's no evidence of that. We have not seen a single document showing that. Judge Kleinfeld, the problem here is that it's reckless for the defendant, and in the absence of evidence, it's reckless for the defendant to conclude that the dismissal was somehow related to an adverse event. Now, with respect to actual damages, Your Honor, I think something that's crystal clear is that there was, in fact, out-of-pocket expenses. My client, and the evidence establishes this, my client testified in a sworn declaration that he had to take the train from his house in Lathrop, which is San Joaquin County, to Berkeley, which is where EBCLC, the East Bay Community Law Center, was located, to ask assistance from a lawyer there, Mr. Jesse Shea, to dispute and to get the dismissed case off of his report. My client testified that he had to pay for a train ticket, although he does not recall how much a train ticket was, and he had to wait hours, hours for the train to arrive and hours for the train to get there. That is clearly out-of-pocket expenses. Time is value. But that's what I don't understand. He was, as I said, there was already a conviction reported, and the conviction would have justified the denial of the housing. So what is all this effort about? How is it going to help him to get rid of this? This is important for a report to look as clean as possible because it's important. But not because of this particular housing? My client had no idea whether this background check company is going to report the same thing to another housing project that he's going to apply to. So far, as he's aware, affordable housing facilities may potentially use the same background check company. He doesn't know. He doesn't know whether this background check company is going to report the same thing again. I thought this company doesn't exist anymore. It doesn't anymore, but at the time it did, and my client had no idea. My client would not have known at the time. My laypeople ordinarily would not know which background check companies are responsible for running what type of background check. So it's important in his mind that everything's clear up because it's possible that the screening pro sells background check reports not only to Maple Square, but to another housing project that he's going to apply to. So that's why he wanted to make sure that the record was clear. And he was told repeatedly that arrest records, at least that was a California statute at the time, that arrest records should not show up on a background check report. If the record that we're dealing with did not show up on his background check report, his background check report would have looked a little bit better. Now, I understand the defendant's argument that saying that he would have been denied housing anyways. But it's important for somebody who went through 30 years of drug addiction and who took the train daily to go to nonprofit agencies to clear up his record for him to know that there is a benefit to what he did. And Mr. Moran, he suffers from both mental and physical disability as a result of his injury and as a result of his years of drug abuse. With that, I reserve two minutes for any additional rebuttal, Your Honor. Thank you very much. You actually have five minutes, I think. I know, but I don't think I'll take more than two minutes, unless you want me to. No, that's fine. Good morning, Your Honors. My name is Michael Saltz. May it please the Court. At first, I'd like to address some of the arguments that were made by my colleague on the other side. With regard to the argument that was just made to this Court, I didn't extrapolate that argument from either any of the documents that were filed with the trial court or any of the briefs that were filed with this court. But I'll address it nonetheless. We do have some strange argument now being made that because we don't know if the dismissal is an adverse item of information, now all of a sudden there has to be a willful violation. This is strange to us. Well, I mean, it does seem to me that the language of the statute is pretty clear. And if you didn't have other obfuscation, you wouldn't be in very good shape. I mean, the notion that a dismissal is an adverse item of information seems impossible. Well, again, we can have that debate. That's not currently before the Court. That was why I was saying this is kind of an odd argument. Well, no, it is before the Court, because the earlier Court already held that it is impossible. And your argument is, well, it may be wrong, but it's not really wrong. We had a good reason to think it. What's the good reason to think it? Well, the good reason to think it, and I'm glad that we can direct everything to now this particular issue. I'm sorry. You think that the plaintiff was arguing something else now? I do think the plaintiff was arguing something else as to whether there was any item with regard to adverse item of information. To the extent that that's the case, there's case law out there that says that the dismissal is still part of the criminal case. And with regard to, yes, there's usually a dismissal, as the Court identified. It may be part of the criminal case, but it has to be an adverse item of information. And I understand, Your Honor. But the record also has, and I'll point the Court to the items in the record if it wishes. But remember, this is not an issue with regard to where the FTC or the CFPB gave guidance with regard to this going the other way. In fact, what they did have out there was the guidance specifically saying that we count the seven years from the reportable event of the adverse information. How can a dismissal be an adverse event? I understand, Your Honor. And in this particular instance, the entire case is the adverse event. And what the law used to say is that we would talk about the disposition, release, or parole as being the item that's being reported. What you're saying is that the day before the dismissal was entered, there was a criminal charge against this man. Right. So understand that the charge was in 2000. The dismissal was in 2004. And by the date being so far apart, that's indicative, especially with our constitutional right to a speedy trial, that's indicative of a diversion program, a plea of guilty. So in this particular instance, the dismissal discloses the plea. And so that is something that could potentially portray the defendant in a false light. But I will point you to the record where the FTC expressly stated that it's the reportable event of an adverse item that you run the seven years from, not its origin. In particular, I will point the court specifically to ER 437-438 and 575-578, which is where the screening pros submitted undisputed evidence that it followed the rule that the operative date under the FCRA, beginning the seven-year reporting period for criminal dismissals, was seven years from the date of the dismissal. It's the date of the reported event. This was based on the statutory text in the FTC interpretations stating that the relevant date for purposes of criminal dismissals under the catch-all provision for Section 1681C-A-5 is, and I quote, the date of reported event. And you can see that at ER page 437. And this was part of the summary interpretations dated July 11th, page 57. The last FTC interpretation on this precise issue was in 1990, where it confirmed that the applicable date for criminal cases resulting in something other than dismissal was the date of disposition. And I quote, quote, if charges are dismissed at or before trial or the consumer is acquitted, the date of dismissal or acquittal is the date of disposition. So remember, this was under the prior rule. So specifically, the undisputed evidence that was submitted was that with regard to the screening post interpretation, it showed that in 1990, the FTC issued this commentary on how to construe the provisions in the FCRA, the 1990 commentary, which can also be found at 16 CFR Part 600. The agency's comments for Section 1681C-A-5 states, quote, the seven-year reporting period runs from the date of disposition release or parole as applicable. But that's prior. That was from the prior language. Right. And I'm laying the foundation as to why I am referring to the 1990 commentary. It says, for example, if charges are dismissed at or before trial or the consumer is acquitted, the date of such dismissal or acquittal is the date of disposition. Then we go forward that the FTC then issued in 2011 the 40 years of experience with Fair Credit Reporting Act and FTC staff report with summary interpretations. You can find that at ER-437. And therein, the FTC stated on page 7 of this that the 1990 interpretations had only become, and I quote, partially obsolete, end quote. Then the commentary also stated that it was expressly incorporating parts of the 1990 commentary that remained applicable. But when did all this occur with regard to Mr. Moran? Wasn't it before 2011? It was in 2010. So he couldn't have been relying on anything that was in the document in 2011. No, but this was the industry standard. And that's my point, is that the FTC had, in 2011, issued a report confirming what the industry standard was. So it was confirming that the FTC – It wasn't confirming anything. It didn't say anything specifically about this. It just said that the guidance was partially incorrect, but it didn't say this particular part was not incorrect. Again, this is referring to the 1990 commentary. But it didn't affirm that comment specifically, right? But then you're just going right into the SAFCO standard where there's no FTC or CFPB guidance to give people the understanding that when you report something, you're reporting it seven years. And I'll give you a perfect example. Understand that based upon this interpretation that was issued in the Moran case, any type of debt is considered an adverse item. Your FICO score goes down when you borrow money, or the FICO score goes down when you use debt. So it is automatically considered an adverse item of information. It portrays you in a false light that you borrowed money. So when you open up a 30-year mortgage, your credit score goes down. You've used your credit. Now, over those 30 years, you pay it on time, as agreed. But after seven years, how can you go ahead and report an on-time payment for a mortgage that was opened up more than seven years ago? Are you not disclosing the prior event? And that's why the industry said, no, that's a ridiculous interpretation. Of course you want us to go ahead and report positive information, even if the prior information it discloses has started from a negative. All credit starts you at a negative. Shakespeare said, neither a borrower nor lender be, that because it was considered to be a negative. There's no case out there that says borrowing money is somehow a positive on a credit. But the holding here was the opposite, as I understand it. Exactly my point. But the industry standard at the time, and Gary Gluck... No, I mean it was the opposite in the sense that it said that the dismissal was not an adverse effect, and therefore information, and therefore couldn't be reported. Your hypothetical is a hypothetical of reporting positive information. That's correct, Your Honor, but you just kind of disclosed the point. No, I didn't. I was saying that your hypothetical is completely inept. I'm sorry, Your Honor, that I didn't make myself clear. The hypothetical is about reporting what you claim is positive information, which otherwise has the tendency to disclose a beginning issue that was otherwise a negative, an adverse item of information. So if we're saying that if I report on year eight a positive payment history of a mortgage, I'm disclosing a non-adverse item of information that discloses an adverse item of information that's more than seven years old. What you just said is that by reporting the dismissal in the criminal case, I am reporting a non-adverse item of information that discloses an adverse item of information that's more than seven years old. It's the exact same. Just because we treat criminal records with a higher degree of negativity doesn't mean I'm not still disclosing the origin of something negative. And the FTC then confirmed this staff report in 2011, where in its end notes specifically refers to the fact that the 1990 commentary applies with equal force and effect with regard to criminal dismissals. It's in writing. The FTC came out and confirmed that this is exactly what needs to happen. Now, the court says, no, we read the language of the FCRA differently. It definitely takes the industry and turns it on its head. But you also can't dismiss the fact that expert testimony was presented by Ann Fortney, the former head of the FTC Division on Credit Practices. She came in and said the interpretation was infinitely reasonable. You also have Justice Kleinfeld saying that our interpretation was correct. And on top of that, you have multiple other judges who all interpreted the matter in the same way. You have Judge William Elslope in Dunford v. American Data Bank. You have Judge Marsha Peckman in Haley v. Talent Wise. You have Judge James L. Robert in Tom Chen v. Vertical Screen, Inc. You have Judge Stephen J. McAuliffe's decision in Landry v. Time Warner Cable. All of those also came after the screening pros issued its report, and they all said the same thing. So I'm afraid that in this particular instance, although we're cashing over certain items, Judge Wilson came in and said, I was convinced, too. And I read the statute in that way, too. And if we have a reasonable interpretation of this language or if the judges somehow disagree, which appears to be the case here, then the statute is subject to being interpreted. It's not clear and unambiguous. There's no prior appellate decisions that would have worn off the screening pros' behavior. And in this particular instance, as Your Honor mentioned, there was no prior FTC guidance saying that they were treating the reporting date any different than they were for mortgages, which would fall into the same trap of the adverse item of information dating back seven years. So as a result, the court correctly found that we meet all of the Safeco standards, in fact potentially exceed them, because we had, in this particular instance, justices agreeing with the screening pro and district court judges. With regard to that, I'm limited in time here. That brings us to the negligent violations. In that regard, counsel did not submit any evidence meeting the negligent standards. There is no evidence with regard to what the standard was with regard to consumer reporting agencies or how they fell below that standard. There was no evidence submitted meeting their burden with regard to establishing FCRA procedures, not state procedures, but FCRA procedures and stating how they weren't followed. The FCRA procedures were there. And again, the testimony of Ann Fortney was provided. In this particular instance, there's no evidence overturning that. And with regard to the damages section, I point to the court to address what counsel argued was he wants his train fare to be reimbursed, to have a letter sent disputing items under 1681I, which is a claim that counsel has waived because it wasn't argued in the opening brief. And in that regard, a summary judgment was also issued on 1681I because the court found that no letter was sent. So he wants to be reimbursed for his expenses for sending a letter that there was no proof it was ever sent or received. And on top of that, such expenses, according to the Second Circuit, are not damages because it doesn't enforce the FCRA. And our district courts have adopted the Second Circuit's ruling. The Second Circuit's decision is talked about in our brief with regard to ‑‑ He has to prove that the error itself caused him to lose housing. And in this particular instance, Your Honor, the criteria form that he signed disclosed to him that the Maple Square does not take into consideration any data that's older than five years. So the 2004 dismissal was older than five years. It was within seven, but it was older than five. So they put in writing that we do not consider this. So there's no way that the one error that is at issue, which is the reporting of a dismissed case that started in 2000 and ended in 2004, caused him the loss of housing because they put in writing that it was the convictions of the theft from an elder or dependent adult that caused him to lose the housing. And, again, Mr. Moran signed this document before he submitted his application. And he was well aware that he also had three other convictions that were even more recent and that he was in court that very month on one of those convictions when he submitted his application. Okay. Thank you very much. Your time is up. We appreciate your argument. Mr. Fock, you have some more. You have some time. Yes, Your Honor. I think this court is absolutely right. The statute is crystal clear. What are we right about? We didn't just sign anything. Well, I'm sorry. I'm sorry. I was presumptuous. What I think is the statute is absolutely clear. And when the statute is clear, all you have to do is just look at the statute and follow the language on its face. Well, what about Mr. Saltz's observation that this information was itself positive information, not negative information? It was only negative because it referred back to an earlier entry, and that the interpretation therefore depends on taking positive information, which is not covered by the statute, and inferring and relying on the negative information that it therefore implied? I think Mr. Saltz is right, that the dismissal is positive information under no circumstances. It's a negative information. I mean, if a criminal charge is considered. Well, fine. Then the statute doesn't apply to it, if that's the case. The only reason the statute applies to it, I mean, it's kind of a subtle point. The only reason that the statute applies to it is because it incorporates some other information that is more than seven years old, but it itself is positive information. So that's why he's saying that there's both ambiguity here, and how could we have known that reporting positive information was going to create a problem under the statute? The problem is not the reporting of the positive information. The problem is the reporting of the negative information, which is the charge. The problem here is that the defendant decided to disclose a charge that's much older than seven years from the date of entry, Which is done by implication from reporting the dismissal, but what they're reporting is a dismissal of positive information. I mean, I understand we held otherwise, and it seems right, but it's not necessarily obvious. I mean, it is obvious, right? If there's no obligation to report a positive information, but by choosing to report a positive information, you necessarily implicate negative information, then why choose to report the positive information in the first place? This is not... I'm sorry. One day before the dismissal was entered in 2004, one day before that. Yes. Was that within the seven years of reporting in 2010? Yes? But there's nothing that occurred except for the fact that there is a pending charge. Is that what you're getting at, Your Honor? Right. There's a pending charge. So the dismissal implies a pending charge the day before within seven years of the date reported. So what's wrong with that? The statute doesn't say that it's reportable for up to seven years for as long as the charge is pending. That's not what the statute says. The statute says records of arrest... You can report an adverse event, right, or an adverse matter. And the fact was that there was a charge against them the day before it was dismissed, within the seven years. From the date of entry or from the date the event occurred, right? There's nothing occurring except for the fact that a charge was filed more than seven years ago. I mean, there is this legal thread, but it's not something that's, you know... But nothing happened. Nobody took any action. The last action that was taken was more than seven years ago when the charges were filed. Go ahead. Right. So what I'm saying is that the defendant had no obligation whatsoever to report the dismissal. They chose to report the dismissal because they wanted to tack on seven years. But then they didn't disclose the underlying charge. Also, Mr. Salt, again, started by slandering my client, saying that the dismissal occurred as a result of diversion. But there's absolutely, again, no evidence of that. This is reckless speculation. I mean, this is an attempt to invoke guilt in the minds of this court. There's no evidence that there was diversion. None. And the problem why we are speculating here is that the defendant did not have good procedures. They purchased second-hand information, and we saw it as is, without verification. And also, the defendant mentioned industry standard. I've been litigating these cases for 10 years. I don't know what the defendant is talking about, industry standard. There's no industry standard that can trump the explicit text of the statute. And the statute is crystal clear. You cannot report any adverse information older than seven years. With that, I'm done. Thank you very much. Thank you both for your argument. The case of Moran v. The Screening Pros is submitted.
judges: BERZON, BEA, Bennett